IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VAN P. FINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 10-00192-KD-B |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This action is before the Court on plaintiff Van P. Finger's motion for partial summary judgment, brief, and proposed determinations of undisputed facts and conclusions of law (Docs. 38, 39, 40), the responses filed by defendant State Farm Fire and Casualty Company (Docs. 49, 50), and Finger's reply (Doc. 52), and State Farm's motion for summary judgment, brief, and suggested determinations of undisputed facts and conclusions of law (Docs. 42, 43, 44), Finger's response (Doc. 48), and State Farm's reply (Doc. 51).

Upon consideration and for the reasons set forth herein, Finger's motion for partial summary judgment (Doc. 38) is **GRANTED** and State Farm's motion for summary judgment (Doc. 42) is **DENIED**.

I. Findings of fact

Defendant State Farm Fire and Casualty Company ("State Farm") issued a homeowners policy and a personal liability umbrella policy ("the umbrella policy") to Plaintiff Van P. Finger ("Finger"), effective from May 29, 2007, through May 29, 2008 (Doc. 19-1 at 11-12; Doc. 39, Ex. A). It is undisputed that the homeowner's policy did not provide coverage for the subject loss; the umbrella policy is the only policy at issue. (Doc. 49 at 2). Finger received and accepted

1

the umbrella policy in Alabama. (Doc. 19-1 at 11-12.) The umbrella policy, as amended, obligated State Farm to pay up to the policy limits ($2 million) for the "net loss" amount Finger might become legally obligated to pay as damages for "personal injury". (Doc. 19-1 at 12, 17, 24-25). The policy defined "personal injury" as follows:

> 9. "personal injury" means injury caused by one or more of the following offenses:
>
>> a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;
>>
>> b. libel, slander, defamation of character or invasion of rights of privacy.

(Id. at 25).

The umbrella policy also contained certain exclusions from coverage. (Id. at 18, 25). One of these exclusions stated that State Farm would not provide insurance "for personal injury when you act with specific intent to cause harm or injury." (Id. at 25).

On May 6, 2008, Thomas C. Weller ("Weller") filed a complaint against Finger alleging slander. (Doc. 20 at 2; Doc. 39, Ex. B). Per the agreement of the parties, the trial court applied Georgia substantive law. (Doc. 39, Ex. B at 1, 3, Ex. D at 3,5). State Farm defended Finger against Weller's claim under reservation of rights, including the right to deny indemnity. (Doc. 42-1 at 8-12).

Georgia law provides that punitive damages may not exceed $250,000, except in certain cases. See Ga. Code Ann. § 51-12-5.1. One of the exceptions is where the defendant acted "with the specific intent to cause harm." Id. at § 51-12-5.1(f). Accordingly, at the request of Weller's counsel, the court's verdict form asked the jury, if it rendered a verdict for Weller, to state whether the jury found that Finger acted with specific intent to harm Weller. (Doc. 39, Exs. F-G; Doc. 43 at 9 n.2; Doc. 50 at 10 n.1).

The jury returned a verdict for Weller on his slander claim, awarding him $100,000 in

compensatory damages and $300,000 in punitive damages, as well as attorney's fees. The jury also found that Finger acted with specific intent to harm Weller. (Doc. 39, Ex. G). The trial court entered judgment on the verdict on December 14, 2009. (Doc. 19-1 at 28). The attorney that State Farm had hired to defend Finger sent State Farm the jury's verdict form. (Doc. 30-3 at 22-23). On June 15, 2010, the trial court entered an order awarding Weller $359,667.10 in attorney's fees and $25,644.23 in costs. (Doc. 39, Ex. I). Thus, the total awarded to Weller for his slander claim was $785,311.33. (Id.; Doc. 19-1 at 28).

In a letter dated December 22, 2009, State Farm informed Finger that it would not indemnify him under the umbrella policy for the judgment in Weller's lawsuit "because the jury verdict found [Finger] acted with specific intent to harm [Weller.]" (Doc. 39, Ex. A at SF-00417 - 18).

II. Procedural history

On March 26, 2010, Finger filed a complaint against State Farm in the Circuit Court of Mobile County, Alabama, alleging breach of contract and demanding declaratory judgment as to State Farm's coverage of Weller's judgment under the umbrella policy. (Doc. 19-1 at 4-5). At the time of the filing of the complaint and at the time of removal, Finger was a citizen of Alabama, while State Farm was a corporation organized under Illinois law and having its principal place of business in Illinois. (Doc. 19 at 1-2).

On April 27, 2010, State Farm timely removed the case to this Court on the basis of diversity pursuant to 28 U.S.C. § 1332(a). (Docs. 1, 19). On December 20, 2010, Finger filed an amended complaint, reasserting his claims in the original complaint and adding a claim of bad faith against State Farm. (Doc. 25).

III. Conclusions of law

    A. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs procedures and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (Dec. 2010).

State Farm, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the nonmoving party has met his burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. denied, 507 U.S. 911 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081 (2005).

B. Alabama law applicable to the umbrella policy

"Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the contract . . . The doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991)) (internal quotations omitted). Insurance policies are contracts subject to Alabama's *lex loci contractus* doctrine. See Cincinnati Ins. Co. v. Girod, 570 So. 2d 595, 597 (Ala. 1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the

5

substantive law of Alabama . . ."). Therefore, because the umbrella policy was received and accepted by Finger in Alabama, and because there is no contractual reference to the laws of another jurisdiction, the laws of Alabama will govern the umbrella policy.

In Alabama, "[g]eneral rules of contract law govern an insurance contract." Safeway Ins. Co. of Ala., Inc. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005). "'In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." Upton v. Miss. Valley Title Ins. Co., 469 So. 2d 548, 554 (Ala. 1985) (quoting Life & Cas. Ins. Co. v. Whitehurst, 226 Ala. 687, 148 So. 164 (1933)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." Allstate Ins. Co. v. Skelton, 675 So. 2d 377, 379-380 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." Safeway Ins. Co., 912 So. 2d at 1143.

Nevertheless, "'[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous.'" Woodall v. Alfa Mut. Ins. Co., 658 So. 2d 369 (Ala. 1995) (quoting Gregory v. W. World Ins. Co., 481 So. 2d 878, 881 (Ala. 1985) (citations omitted)). "Whether a provision of an insurance policy is ambiguous is a question of law[,]"

6

Safeway Ins. Co., 912 So. 2d at 1143, and "[t]he test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. This means that the terms of an insurance policy should be given a rational and practical construction." Porterfield v. Audubon Indem. Co., 856 So. 2d 789, 799 (Ala. 2002) (internal citations and quotations omitted).

"A corollary to the ambiguity doctrine is the illusory coverage doctrine. Alabama recognizes this general law that the language or interpretation of an ambiguous provision by an insurance company may be so tortured as to result in 'illusory' coverage." Titan Indem. Co. v. Newton, 39 F. Supp. 2d 1336, 1344 (M.D. Ala. 1999) (citing Indus. Chem. & Fiberglass Corp. v. Hartford Accident & Indem. Co., 475 So. 2d 472, 478-79 (Ala. 1985)). To put it another way, "[w]hen limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory[,]" and "Alabama law does not countenance such illusory coverage." Shrader v. Emp'rs Mut. Cas. Co., 907 So. 2d 1026, 1033 (Ala. 2005) (internal citations and quotations omitted). "Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, . . . while the insurer bears the burden of proving the applicability of any policy exclusion." Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing Colonial Life & Accident Ins. Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967) and U.S. Fid. & Guar. Co. v. Armstrong, 479 So. 2d 1164, 1168 (Ala. 1985)).

IV. <u>Analysis</u>

A. <u>Declaratory judgment and breach of contract</u>

Finger argues that exclusion of intentional personal injuries is repugnant, ambiguous, or illusory to the provision which specifically covers "slander," and thus the Court should construe the exclusion against State Farm. Finger relies heavily on <u>Titan Indemnity Co. v. Riley</u>, 641 So. 2d 766 (Ala. 1994), which also involved an insurance policy with an exclusion for offenses committed intentionally. The Eleventh Circuit has summarized the holding in <u>Titan Indemnity Co.</u> as follows:

> Titan Indemnity Company brought a declaratory action seeking a determination of whether Titan was obligated to defend[, <u>Titan Indemnity Co. v. Riley</u>, 641 So. 2d 766, 768 (Ala. 1994)] (<u>Titan I</u>)[,] and indemnify[, <u>Titan Indemnity Co. v. Riley</u>, 679 So. 2d 701 (Ala. 1996)] (<u>Titan II</u>)[,] four City of Montgomery police officers in connection with a 42 U.S.C. § 1983 action based on violation of the plaintiff's constitutional rights . . . In <u>Titan I</u>, the Alabama Supreme Court concluded that "the language of the policy did preclude coverage for intentional acts, but it also *specifically provided coverage for . . . offenses that require proof of intent . . .* [and] specifically provided coverage for claims brought under the Federal Civil Rights Act." <u>Titan I</u>, 641 So. 2d at 768. As a result, the conflict between the provisions created "an inherent ambiguity within the policy." <u>Id.</u> This conflicting language and resulting ambiguity in the policy, when interpreted in favor of the insured, resulted in coverage for the defense of the 42 U.S.C. § 1983 claims against the officers. <u>Id.</u>

<u>Emp'rs Mut. Cas. Co. v. Mallard</u>, 309 F.3d 1305, 1310 (11th Cir. 2002) (emphasis added).

State Farm responds that because Georgia law defines "slander" to include negligent slander, the exclusion does not completely contradict the insuring provision and is thus not illusory. See <u>Shrader</u>, 907 So. 2d at 1033 ("When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." (internal quotations omitted)).

8

The policy is illusory if it provides coverage on the front side and then excludes it on the backside. Thus, the question is whether the offense of "slander," which is specifically covered in the policy, is then excluded elsewhere in the policy.

Slander is not defined in the policy. "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. The court should not define words it is construing based on technical or legal terms." Lambert v. Coregis Ins. Co., Inc. 950 So. 2d 1156, 1161-62 (Ala. 2006) (internal citations and quotations omitted). This is particularly true when a policy purports to provide nationwide coverage for an act that has varying legal definitions among states.

Contrary to State Farm's urging, the Court cannot construe "slander" based solely on the legal elements of slander as defined by either Georgia's or Alabama's legal definition. Rather, the Court must look to its ordinary meaning, which is "a *malicious* false statement that is spoken about a person." Pocket Fowler's Modern English Usage 397 (Robert Allen ed., 2d ed. 2008) (emphasis added). See also Liberty Nat'l Life Ins. Co. v. Daugherty, 840 So. 2d 152, 157 (Ala. 2002) ("The foundation of an action for libel or slander is a malicious injury to reputation . . ."); Kenneth J. Vandevelde, A History of Prima Facie Tort: The Origins of a General Theory of Intentional Tort, 19 Hofstra L. Rev. 447, 459 (1990) ("Slander, [Oliver Wendell] Holmes observed, often had been said to require malice, which suggested that actual intent to cause harm, if not malevolence, was required."); Sean W. Gallagher, Note, The Public Policy Exclusion and Insurance for Intentional Employment Discrimination, 92 Mich. L. Rev. 1256, 1274 n.75 (1994) ("'Insurance companies, in comprehensive liability policies, ... generally cover liability arising from libel and slander, invasion of privacy, false arrest, and false imprisonment, as well as

9

malicious prosecution... Every one of the acts recited requires a deliberate, and generally thoughtful and purposeful, act.'" (quoting 12 John A. Appleman & Jean Appleman, Insurance Law and Practice 7031, at 150 (1981)). Also, the ordinary meaning of "malicious" is "intending to do harm." Pocket Fowler's Modern English Usage, supra, at 413 (internal quotations omitted).

It was therefore reasonable for Finger to believe that the term "slander," as used in the umbrella policy and not otherwise defined, specifically denoted malicious (i.e. intentionally harmful) acts. As such, it was also reasonable that he believed he would be covered against any claim of slander by the umbrella policy. See Davidson v. Cincinnati Ins. Co., 572 N.E.2d 502, 508 (Ind. Ct. App. 1991) ("Although the argument can be made that Davidson could recover when malicious prosecution or slander resulted from recklessness, the possibility of Davidson recovering under these circumstances is very remote . . . [M]ost cases involving malicious prosecution and slander are a result of an intentional wrongdoing. Therefore, it was reasonable for Davidson to have assumed that if he were accused of malicious prosecution or slander, he would be covered under his policy which insured for personal injury (i.e., malicious prosecution and slander)."); N. Bank v. Cincinnati Ins. Cos., 125 F.3d 983, 986 (6th Cir. 1997) (Where a "policy defines 'personal injury' to include a number of torts which are inherently intentional[,]" such as slander, but also excludes coverage for intentional torts, these terms "are inconsistent and create an ambiguity."); Hurst-Rosche Eng'rs v. Commercial Union Ins. Co., 51 F.3d 1336, 1345 (7th Cir. 1995) ("The [insurance] policy defined covered personal injury claims to include claims for 'libel, slander, defamation of character, false arrest, willful or false detention or imprisonment, wrongful eviction or entry, malicious prosecution, humiliation, [and] invasion of privacy . . . .' Many of these torts, by definition, require proof of intent or willfulness. Despite

10

this apparent coverage for the specified intentional torts, the [] policy's definition of an "occurrence" limits coverage only to those claims resulting from unintentional conduct. These provisions . . . are ambiguous and create an internal inconsistency[.]"); Alstrin v. St. Paul Mercury Ins. Co., 179 F. Supp. 2d 376, 397-98 (D. Del. 2002) (citing Davidson in holding that "[t]he fact that some limited amount of coverage might survive the intentional act exclusion is not sufficient grounds to apply an exclusion that is irreconcilable with the coverage grant itself . . . Even though certain securities claims do not require intentional misconduct, applying the intentional fraud exclusion to the securities coverage at issue would eviscerate coverage for the majority of securities claims."); Tush v. Pharr, 68 P.3d 1239, 1249 (Alaska 2003) ("[A]lthough Tush's policy excludes intentional acts, the policy explicitly covers injuries arising out of wrongful eviction, a tort that may be committed either as intentional or unintentional . . . Tush's policy does not differentiate between intentional and negligent wrongful eviction. Accordingly, because the policy includes wrongful eviction, it must be deemed to be excluded from the intentional acts exclusion." (internal citations and footnotes omitted)). Thus, the subsequent exclusion in the policy for "personal injury" inflicted with "specific intent to cause harm or injury" rendered coverage for claims of slander ambiguous or illusory, and such ambiguity must be resolved in favor of the insured.

The Court declares that State Farm owes coverage for Weller's judgment against Finger. State Farm has therefore breached the umbrella policy by refusing to indemnify Finger for this judgment. Accordingly, Finger's motion for partial summary judgment is **GRANTED**, and State Farm's motion for summary judgment is **DENIED** as to Finger's claims for declaratory judgment and breach of contract.

B. Bad faith

Finger has also alleged bad faith by State Farm, claiming it relied on an ambiguous policy to deny coverage of the judgment for slander against Finger. (Doc. 25 at 2). Under Alabama law, "reliance on an ambiguous portion of a policy as a lawful basis for denying a claim" constitutes an "abnormal" bad-faith refusal to pay an insurance claim. White v. State Farm Fire & Cas. Co., 953 So. 2d 340, 349 (Ala. 2006) (internal quotations omitted). Therefore, based on the discussion *supra,* State Farm's motion for summary judgment is **DENIED** as to Finger's claim of bad faith.[1]

V. Conclusion

For the reasons set forth above, it is **ORDERED** that Finger's motion for partial summary judgment (Doc. 38) is **GRANTED** and that State Farm's motion for summary judgment (Doc. 42) is **DENIED**.

**DONE** and **ORDERED** this the **19th** day of **May, 2011**.

    /s/ Kristi K DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[1] Finger did not move for summary judgment on the claim of bad faith. Thus, this claim remains.