IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VAN P. FINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 10-00192-KD-B |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter came before the Court for a non-jury trial on June 30, 2011. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record, the Court makes the following findings of fact and conclusions of law:

**I.    Procedural Background**

On March 26, 2010, Plaintiff Van P. Finger ("Finger") filed a complaint against Defendant State Farm Fire and Casualty Insurance Company ("State Farm") in the Circuit Court of Mobile County, Alabama, alleging breach of contract and demanding declaratory judgment as to State Farm's coverage of a judgment for slander against Finger under a personal liability umbrella policy ("the umbrella policy") issued by State Farm to Finger. (Doc. 19-1 at 4-5). At the time of the filing of the complaint and at the time of removal, Finger was a citizen of Alabama, while State Farm was a corporation organized under Illinois law and having its principal place of business in Illinois. (Doc. 19 at 1-2).

On April 27, 2010, State Farm timely removed the case to this Court on the basis of diversity pursuant to 28 U.S.C. § 1332(a). (Docs. 1, 19). On December 20, 2010, Finger filed an

amended complaint, reasserting his claims in the original complaint and adding a claim of bad faith against State Farm. (Doc. 25). On May 19, 2011, the Court granted summary judgment for Finger as to his declaratory judgment and breach of contract claims and denied State Farm's motion for summary judgment on Finger's claim of bad faith. (Doc. 53).

The remaining issues are 1) damages for the breach of contract and 2) Finger's claim of "abnormal" bad faith under Alabama law. (Doc. 54 at 2-3). State Farm claims that it is not liable for bad faith because it relied in good faith on the advice of counsel in denying Finger's claim.

## II. **Findings of Facts**

State Farm issued a homeowners policy and an umbrella policy to Finger, effective from May 29, 2007, through May 29, 2008 (Plaintiff's Trial Exh. #1; Trial testimony of Van Finger and John Hill). It is undisputed that the homeowner's policy did not provide coverage for the subject loss; the umbrella policy is the only policy at issue. (Trial testimony of Van Finger and John Hill). The umbrella policy, as amended, obligated State Farm to pay up to the policy limits ($2 million) for the "net loss" amount Finger might become legally obligated to pay as damages for "personal injury". (Plaintiff's Trial Exh. #1). The policy defined "personal injury" as follows:

> 9. "personal injury" means injury caused by one or more of the following offenses:
>
>> a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;
>>
>> b. libel, slander, defamation of character or invasion of rights of privacy.

(Id. at 25).

The umbrella policy also contained certain exclusions from coverage. (Id. at 18, 25).

2

One of these exclusions stated that State Farm would not provide insurance "for personal injury when you act with specific intent to cause harm or injury." (Id. at 25).

On May 6, 2008, Thomas C. Weller ("Weller") filed a complaint against Finger alleging slander. (Defendant's Trial Exh. #1). Per the agreement of the parties, the trial court applied Georgia substantive law. (See 1:08-CV-00240-CG-C, docket entry 93, p. 3). State Farm defended Finger against Weller's claim under a reservation of rights. (Plaintiff's Trial Exh. #38). Between May 15, 2008 and November 13, 2009, Finger was sent six reservation of rights letters, all which specifically set forth the exclusion for specific intent acts. (Id.; Trial testimony of John Hill).

Georgia law provides that punitive damages may not exceed $250,000, except in certain cases. See Ga. Code Ann. § 51-12-5.1. One of the exceptions is where the defendant acted "with the specific intent to cause harm." Id. at § 51-12-5.1(f). Accordingly, at the joint request of counsel, the court's verdict form asked the jury, if it rendered a verdict for Weller, to state whether the jury found that Finger acted with specific intent to harm Weller. (See 1:08-CV-00240-CG-C, docket entry 135; Plaintiff's Trial Exh. #31).

On December 11, 2009, the jury returned a verdict for Weller on his slander claim, awarding him $100,000 in compensatory damages and $300,000 in punitive damages, as well as attorney's fees. The jury also found that Finger acted with specific intent to harm Weller. (Defendant's Trial Exh. #10). The trial court entered judgment on the verdict on December 14, 2009. (Defendant's Trial Exh. #11). On June 15, 2010, the trial court entered an order awarding Weller $359,667.10 in attorney's fees and $25,644.23 in costs. (Plaintiff's Trial Exh. #31, docket entry 193). Thus, the total awarded to Weller for his slander claim was $785,311.33. (Plaintiff's Trial Exhs. #10, 11, 31, 32).

Although the complaint charged slander with the specific intent to harm and State Farm had repeatedly notified Finger that it was defending Finger under a reservation of rights, prior to trial State Farm expected to pay any verdict rendered. (Trial testimony of John Hill). This expectation was based on the experience of State Farm that the issue of specific intent is not usually addressed specifically by a jury, thus State Farm would have no basis to deny the claim based on the exclusion. (Id.). However, when the special verdict was returned finding specific intent to harm, it was the opinion of State Farm that coverage was not available. (Id.). In an effort to give the insured the benefit of the doubt, State Farm sought an advisory legal opinion prior to denying coverage. (Id.). This opinion was solicited from Mark Hess, an experienced and highly qualified insurance defense lawyer. (Id.; Trial testimony of Mark Hess).

Mr. Hess advised State Farm that the exclusion for injuries inflicted with specific intent to cause harm or injury was not ambiguous and excluded the verdict returned by the jury. (Defendant's Trial Exh. #12). In a letter dated December 22, 2009, State Farm informed Finger that it would not indemnify him under the umbrella policy for the judgment in Weller's lawsuit "because the jury verdict found [Finger] acted with specific intent to harm [Weller.]" (Plaintiff's Trial Exh. #14).

Finger's counsel sent State Farm letters dated December 29, 2009, February 1, 2010, and February 10, 2010, asking State Farm to reconsider its position and to provide coverage for the judgment. (Plaintiff's Trial Exhs. #15, 20, 22). Following receipt of the letters from Finger's counsel dated December 29, 2009, and February 1, 2010, State Farm sent the letters to Mark Hess to determine whether the letters changed counsel's opinion regarding coverage for the verdict. (Trial testimony of John Hill and Mark Hess). Mr. Hess advised State Farm that the letters did not change his opinion and that his opinion was still that the exclusion contained in the

4

umbrella policy was not ambiguous, the coverage provided by the umbrella policy was not illusory and that the umbrella policy did not cover the jury's verdict. (Defendant's Trial Exhs. #37, 38). Accordingly, State Farm declined to reconsider its decision to deny coverage for the slander judgment against Finger. (Plaintiff's Trial Exhs. #21, 23).

### III. Conclusions of Law

In the order granting summary judgment for Finger on his claims of declaratory judgment and breach of contract, the undersigned determined that the "exclusion in the policy for 'personal injury' inflicted with 'specific intent to cause harm or injury' rendered coverage for claims of slander ambiguous or illusory[.]" (Doc. 53 at 11). As such, State Farm relied on an ambiguous portion of a policy as a lawful basis for denying a claim.

In White v. State Farm Fire & Casualty Co., 953 So. 2d 340 (Ala. 2006), the Alabama Supreme Court stated:

> In the "abnormal" case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim.
>
> Bad faith is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will.
>
> . . . [I]n an "abnormal" case, [an insurer] cannot use ambiguity in the contract as a basis for claiming a legitimate or arguable reason for not paying the claim. Otherwise, an insurance company would have the incentive to write an ambiguous policy in order to create a defense to a bad-faith claim.

Id. at 349 (internal citations and quotations omitted). Thus the denial in this case, which was ultimately determined to be based on ambiguous language in the policy, can form the basis of an abnormal bad faith claim. However, it is not automatic. Although "reliance on an ambiguous portion of the policy" is not qualified by intentional or reckless, White makes it clear that a bad

5

faith claim certainly cannot be based on principles of absolute liability, i.e., liability without intent or fault or even negligence. Id. ("Bad faith is not simply bad judgment or negligence.") Rather, plaintiff must show a "dishonest purpose" to prevail. Id. See also Pioneer Servs. v. Auto-Owners Ins. Co., Inc., No. 2:06-cv-377-WKW, 2007 WL 2059109, at *9, 2007 U.S. Dist. LEXIS 50678, at *28 (M.D. Ala. July 12, 2007) ("[A] dishonest purpose is required even when reckless conduct of the defendant is present.").

State Farm claims it is entitled to an affirmative defense of advice of counsel on Finger's bad faith claim. Advice of counsel has been permitted as a defense for claims of bad-faith refusal to pay insurance benefits. See Davis v. Cotton States Mut. Ins. Co., 604 So. 2d 354, 359 (Ala. 1992) ("Crucial to the insurers' showing that they did not act in bad faith is their employment of a lawyer in private practice to research the coverage of the motor vehicle."). However, the defense is not absolute. See 1-13 Alabama Liability Insurance Handbook § 13.21 (MB) (2010) (citing Davis, supra, and Chavers v. Nat'l Sec. Fire & Cas. Co., 405 So. 2d 1, 8 (Ala. 1981) ("While advice of counsel, along with all the other relevant factors, may be considered by the trial judge in his determination whether the strongest tendencies of the evidence, if believed, make out a case for the jury on the "lawful basis for refusal" issue, it is not necessarily an absolute defense. Where, as here, the advice of insurer's counsel is not founded on professional evaluation of the credibility of admissible evidence, but instead is confined totally to inadmissible and unproved hearsay evidence, absent any ongoing investigation relative thereto, such advice cannot serve, as a matter of law, to insulate the insurer client from bad faith liability.")). A party asserting that he relied on the advice of counsel must show "that he: (1) made a complete disclosure of the facts to his attorney; (2) requested the attorney's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied upon

the advice in good faith." Ex parte Meadowbrook Ins. Grp., 987 So. 2d 540, 550 (Ala. 2007) (internal quotations omitted).

**IV.     Analysis**

In response to State Farm's defense of advice of counsel, Finger points to evidence that Mark Hess was not provided with the claim file, the coverage file or the complaint. (Trial testimony of Mark Hess). However, the Court does not find that this supports a finding that State Farm failed to provide the necessary facts to the attorney. Mr. Hess' opinion was restricted to interpreting the language of the policy in light of the verdict which included a special finding of specific intent to harm. It appears that he had the necessary facts to support an opinion. Thus, State Farm can assert an advice of counsel defense. However, advice of counsel is only one factor for the Court to consider in determining whether there was bad faith on the part of State Farm. As previously stated, Finger must establish that State Farm acted with a dishonest purpose.

Finger argues that State Farm did not deal with him fairly and honestly. In support of this claim, Finger points to evidence that State Farm's representatives never orally communicated to him that they would not pay the verdict. (Trial testimony of Van Finger). Finger also points to the fact that State Farm's representatives admit that throughout the litigation it was always their intention to pay any judgment rendered. (Id.; Trial and deposition testimony of John Hill). Finger also submitted evidence that although two days before trial he requested that State Farm settle the case, the request was not granted,[1] the implication being that State Farm knew that it

---

[1] The plaintiff offered to settle for a sum of $300,000 (paid by a personal check from Finger to the charity of Weller's choice) and an apology from Finger. (Trial testimony of Van Finger). There was no evidence that Finger agreed to these conditions.

7

was not risking its own money by going to trial.

The determination of bad faith comes down to the credibility of John Hill, State Farm's representative. Upon consideration of Mr. Hill's trial and deposition testimony, the Court finds Mr. Hill's explanation to be credible. While it may have been unusual for State Farm to deny coverage post-verdict, no reasonable person can seriously debate that State Farm had not put Mr. Finger on notice of this possibility. Mr. Finger was sent six reservation of rights letters. It is credible, based on Mr. Hill's experience that specific intent to harm is not usually specially determined in a verdict, that throughout the litigation State Farm never expected to deny coverage. Moreover, the Court does not find that State Farm knew or recklessly disregarded the fact that the contract was ambiguous. While the undersigned has determined that the policy was in part ambiguous, it was not an easy decision based on crystal clear precedent. State Farm's reliance on an experienced and highly qualified attorney's contradictory but thoroughly analyzed opinion was in good faith. Accordingly, the Court does not find that State Farm acted in bad faith by denying coverage.

**V.     Damages**

Having succeeded on his claim for breach of contract (Doc. 53), Finger is entitled to compensatory damages of $785,311.33, the total judgment against Finger in Weller's slander suit. See Ex parte Steadman, 812 So. 2d 290, 295 (Ala. 2001) ("'The general rule as to the measure of damages in breach of contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.'" (quoting Brendle Fire Equip., Inc. v. Elec. Eng'rs, Inc., 454 So. 2d 1032, 1034 (Ala. Civ. App. 1984)).

8

The Court finds that Finger is entitled to prejudgment interest. "In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law." AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007). See also Developers Sur. & Indem. Co. v. Old Towne Station, LLC, Civil Action No. 2:09cv757-MHT (WO), 2010 U.S. Dist. LEXIS 83527, at *5 (M.D. Ala. Aug. 16, 2010) (Where plaintiff seeks prejudgment interest in case arising under diversity jurisdiction, "'the interest rate should be set by state law.'" (quoting Lewis v. Haskell Co., Inc., 304 F. Supp. 2d 1347, 1351 (M.D. Ala. 2004))). Therefore, in this diversity action for breach of contract, Finger is first entitled to prejudgment interest at 6% per annum on $400,000 from December 14, 2009 (the date of entry of judgment on Weller's slander claim), through June 14, 2010 (the date before entry of judgment on Weller's claims for attorney's fees and costs). Second, Finger is entitled to prejudgment interest at 6% per annum on $785,311.33 from June 15, 2010 (the date of entry of judgment on Weller's claims for attorney's fees and costs), until the date of judgment in this case.[2]

---

[2] See Braswell v. Conagra, Inc., 936 F.2d 1169, 1177 (11th Cir. 1991) ("The Alabama Code authorizes prejudgment interest on damages for breach of contract. Ala. Code § 8-8-8 (1975). The Supreme Court of Alabama has interpreted section 8-8-8 to award prejudgment interest only in those contract cases where the damages are certain or capable of being made certain. Miller & Co. v. McCown, 531 So. 2d 888, 889 (Ala. 1988)."); Mut. Serv. Ins. Co. v. Frit Indus., 358 F.3d 1312, 1325-26 (11th Cir. 2004) ("'It is well established that an insured is entitled to collect interest only from the date the loss should have been paid *to the date of the judgment*.' First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc., 899 F.2d 1045, 1065 (11th Cir. 1990) (emphasis added) (citing Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 530 So. 2d 1371, 1378 (Ala. 1988))."); Murray v. Holiday Isle, LLC, Civil Action No. 07-0771-WS-M, 2009 WL 3634099, at *1, 2009 U.S. Dist. LEXIS 101740, at *5-6 (S.D. Ala. October 30, 2009) (Steele, J.) (slip copy) ("Under Alabama law, it is well established that prejudgment interest at the default rate of 6% may be available in the breach of contract context where, as here, damages were reasonably certain at the time of breach." (citations omitted)); Comeq, Inc. v. Mitternight Boiler Works, Inc., 456 So. 2d 264, 269 (Ala. 1984) ("[P]rejudgment interest [pursuant to Ala. Code 8-8-8 (1975)] should be calculated at the rate of six per cent per annum pursuant to § 8-8-1, [Ala.] Code 1975 . . .").

Finally, Finger is entitled to postjudgment interest pursuant to 28 U.S.C. § 1961.[3] <u>Ins. Co. of N. Am. v. Lexow</u>, 937 F.2d 569, 572 (11th Cir. 1991) ("[I]n awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute, 28 U.S.C. § 1961(a), rather than the state interest statute.").

**VI. Conclusion**

Based upon the foregoing, it is **ORDERED** that the Court finds in favor of State Farm on Finger's claim of bad faith and that Finger is entitled to damages on his breach of contract claim as set out herein.

A separate <u>Judgment</u> shall issue contemporaneously with this Order.

**DONE** and **ORDERED** this the **5th** day of **July, 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
 **UNITED STATES DISTRICT JUDGE**

---

[3] The most recent postjudgment interest rate, the average 1-year constant maturity Treasury yield for the week ending July 1, 2011, is 0.19%. <u>See</u> http://www.federalreserve.gov/releases/h15/current/ (last visited today).